JACOB ADAMS *vs.* UNITED ELECTRIC RAILWAYS COMPANY.

JANUARY 15, 1938.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J.   In this action of trespass on the case for negligence the jury returned a verdict for the plaintiff in the sum of $1500, which was later approved by the trial justice. The case is before us solely on the defendant's exception to the amount so awarded, which it claims is excessive, all other exceptions being expressly waived.

The accident happened in the city of Pawtucket in the afternoon of October 3, 1935. The evidence shows that the

plaintiff, a resident of Boston, Massachusetts, stopped his automobile, at an angle to the curb on the right-hand side of Pleasant street, to ask a person on the sidewalk the way to the railroad station in that city. It is undisputed that the left rear corner of the automobile was close to the defendant's tracks and that a trolley car, which came from behind the automobile without diminishing its speed, struck it somewhere in the left rear. The testimony shows that the body of the trolley car cleared the automobile but that its front step, which in some way became unfastened, caused the contact resulting in the accident.

At the time of the collision the plaintiff was seated behind the wheel of the automobile, with his body twisted and leaning to the right so as to face one Lester Stafford, who, standing on the sidewalk with one foot on the right running board of the automobile, was talking to the plaintiff through the open window on that side of the automobile. The witness Stafford testified that the trolley car struck the automobile a "sharp blow", moving it some four or five inches, and that, even though he jumped back on the sidewalk to avoid injury to himself, he was "jarred a bit" by the force of the collision. The plaintiff testified that, while the upper part of his body was in the twisted position above described, he was thrown forward by the force of the blow and soon after felt pain in the lower part of his back. The evidence shows that when the trolley car came to a stop there was a distance of between five and ten feet from the rear of the trolley car to the front of the automobile, according to the motorman, and of between fifty and sixty feet, according to the plaintiff.

The damage to the two vehicles was as follows. It is undisputed that the front step of the trolley car was completely torn away from the body of the car. The plaintiff testified that the rear axle and left rear wheel of the automobile were so damaged that new ones had to be installed, and

that the tail light, rear mudguard and running board on the left side, as well as the left portion of the trunk on the rear of the automobile, had to be repaired. The defendant, without contradicting this testimony, attempts to minimize the force of the collision by urging that, after "the left rear mudguard was straightened out", the plaintiff was able to drive his automobile to Boston.

The plaintiff testified that following the accident he drove slowly back to Boston, without attending to his business in Pawtucket; that when he arrived home, he went to bed and called his family physician, who gave him some temporary treatment and advised him to rest as much as possible; that, although he went to his office on the following day and continued to go there thereafter, he could no longer drive an automobile on long trips, as his business required; that frequently he had to sit or lie down because of the pain in his back; that, when his condition did not improve, he consulted Dr. Banquer, who, after strapping his back on two occasions, finally ordered him to wear a tightly fitting surgical belt, which was made of heavy canvas with a steel brace in the back; that he followed the doctor's orders and has worn this belt ever since, except when in bed; that his back was X-rayed at the direction of Dr. Banquer by a Dr. Rudman; and that, notwithstanding a strict compliance with the doctor's orders, his condition has not substantially improved.

The medical evidence in the case rests upon the testimony of Dr. David M. Banquer of Boston for the plaintiff, and of Dr. Charles M. Gormly of Providence, for the defendant. The record shows that both are men of high professional standing. The former treated the plaintiff at his office on October 9 and 15, 1935, February 3, 7, 17 and April 1 and 6, 1936; the latter examined the plaintiff on June 7, 1936, by arrangement with Dr. Banquer, who furnished him with a copy of the X-ray report from Dr. Rudman. Both doctors agree that the plaintiff is suffering from a sacroiliac strain,

with resulting limitation of motion, as a probable consequence of the accident. They disagree as to the cause of the arthritis in the lumbar vertebrae and left sacroiliac joint shown by the X-ray plate in evidence. On this point Dr. Banquer testified that in his opinion this localized arthritis was due to the accident, explaining that if it was a preexisting condition it would have manifested itself in other parts of the plaintiff's body, especially the hands and feet.

Dr. Gormly, on the other hand, testified that in his judgment this arthritic condition existed before the accident, although the plaintiff may not have been aware of its existence. Both doctors agreed that the plaintiff required further treatment, but disagreed as to the permanency of the injury. Dr. Banquer believed that the injury was more or less permanent, while Dr. Gormly saw no reason why the plaintiff should not continue to improve, without specifically saying if and when the plaintiff would completely recover. There is no evidence that the plaintiff had suffered with his back before the accident, although the defendant suggested it in its cross-examination of the plaintiff.

The damage to the automobile is not involved in this case as it belonged to the Adams Coal & Wood Company, a corporation, nor is any claim made by the plaintiff for loss of wages. The plaintiff's monetary loss up to the time of trial amounts to $70. In addition, the evidence shows that the plaintiff requires some further medical treatment, the amount and duration of which are in dispute.

The defendant argues that in the circumstances of this case the jury's verdict is grossly excessive. The trial justice, who saw and heard the witnesses while testifying, has given us the benefit of his considered judgment on the question of damages. According to our well-established rule, we will regard his determination as of great persuasive force, unless, from our examination of the transcript, it appears to us that such determination upon the weight of the evidence is clearly

wrong or that his decision was not made upon conflicting evidence but was based upon a misconception of the evidence in the case. *Surmeian* v. *Simons,* 42 R. I. 334; *Nichols* v. *New England Tel. & Tel. Co.,* 57 R. I. 180; *Hamilton* v. *Rosen,* 58 R. I. 35; *Anderson* v. *Johnson,* 59 R. I. 241.

In denying the defendant's motion for a new trial, the trial justice accepts the testimony of the medical expert for the defendant, and says: "He (Dr. Gormly) said this man suffered this strain of the back because he had arthritis. Not that arthritis was caused by the strain of the back, but that the arthritis that he had caused him to sustain the injury. He had a weak back. After considering all the evidence as to his pain and suffering and the aggravation of his trouble because of this accident, it strikes me that this jury have not gone so far wrong that it is necessary for the court to intercede."

This language clearly indicates that, while the trial justice considered the verdict of the jury liberal, he did not find it either unreasonable or unjust. Our examination of the evidence leads us to the same conclusion. As we cannot say that he was clearly wrong in his ruling or that he misconceived the evidence, we find no reason for disturbing his decision.

The defendant's exception is, therefore, overruled and the case is remitted to the superior court for the entry of judgment on the verdict.

*Greenough, Lyman & Cross, Harvey S. Reynolds, Ronald C. Green, Jr.,* for plaintiff.

*Clifford Whipple, Frank J. McGee,* for defendant.